## Hovey *v.* Grant.

On the question of a person's pretended and fraudulent purchase of property, evidence of his obtaining or attempting to obtain other property, under color of a purchase, without paying for it, so connected in time and circumstances as to afford proof of a general scheme of fraud, is admissible.

Whether evidence of this kind should be excluded on account of its remoteness in point of time, is a question of fact.

A pretended purchaser of goods, intending not to pay for them, inducing their owner to let him have them on credit, and obtaining them by fraudulently representing or causing their owner to believe he intends to pay for them, or by fraudulently concealing the intent not to pay, is liable to the owner in an action of trover for the value of the goods. And the case of such pretended purchaser, intending to avoid payment by taking advantage of a law prohibiting the sale of the goods, is not an exception to the general rule.

A ruling, in such a case, that the measure of damages is the market value of the goods at the time of the conversion, is sufficiently favorable to the defendant.

TROVER, by Eben W. Hovey and Henry B. Nottage against Joseph S. Grant, for 21 barrels of whiskey and 1 barrel of gin, alleged to have been converted on August 26, 1870. Writ dated October 4, 1870. An agreement with reference to the purchase of the liquors by the defendant of the plaintiffs was made in Boston. The plaintiffs' position was that the defendant bargained for the liquors at certain cash prices, and that possession was delivered to him with the understanding and agree-

ment that the defendant should have four days after the arrival of the liquors at Portsmouth (where the defendant resided) in which to examine them, at the expiration of which time the liquors were to be paid for, if found satisfactory,—otherwise to be returned, and that the liquors should remain the property of the plaintiffs till paid for ; that the defendant never paid for the goods, and so no title passed from the plaintiffs to the defendant. The plaintiffs also claimed that when the defendant bargained for the liquors, he had in fact no intention of paying for them, and obtained them by means of false and fraudulent representations ; in proof of which last petition they offered to show that, about the time of the purchase of the liquors in question, the defendant made very large and unusual purchases of liquors of other parties, which he did not intend to pay for, and for which he subsequently paid, upon a compromise with his creditors, 25 cents on the dollar. The liquors were received by the defendant at Portsmouth, and some of them were sold by him. The purchase of the liquors was on August 24, 1870. The defendant's position was, that he bought the liquors honestly, and in good faith ; that he purchased about the same time large quantities of liquors of other parties, a controlling motive with reference to the purchase of them all being his expectation, entertained in common with other dealers, that the United States government would restore a heavy tax upon liquors, which tax had been suspended, and that the holder of large quantities, at the time of such restoration of the tax, would be largely benefited thereby ; that he agreed to pay cash for the liquors, if, after an examination of them upon their arrival at Portsmouth, they should be found such as had been represented with regard to quantity and quality ; that the liquors arrived in due season, but an examination of them was delayed by reason of sickness in the defendant's family ; that he never made any bargain with the plaintiffs that the goods should remain theirs till paid for ; that, before the arrival of the liquors at Portsmouth, the defendant, becoming dissatisfied by reason of some inquiries made concerning him by one of the plaintiffs, countermanded the order for them, but, upon receiving apologies, finally agreed to take them upon a credit of sixty days, and they were sent to him in accordance with this latter agreement ; that, upon subsequent examination of the liquors, they were found to be of inferior quality, and not the same which he had purchased ; that Hovey, one of the plaintiffs, examined them with the defendant, and admitted that there was some mistake about it ; that the defendant then offered to return the liquors, but Hovey requested him to sell them as best he could, and that he did sell them at half price.

Whatever was at all material in the testimony of the plaintiffs was contradicted and denied by the defendant, and *vice versa.*

Subject to the defendant's exception, the plaintiffs were permitted to introduce the testimony of C. C. Moore, to the effect that, on or about September 20, he sold liquors to the defendant to the amount of about $600, on a credit of a week or ten days ; and that sometime in October of the same year, but after the commencement of this suit, and after

the goods, estate, stock in trade, and household furniture of the defendant had been attached to the amount of four thousand dollars upon the plaintiffs' writ, he voluntarily compromised with the defendant, and accepted fifty cents on the dollar in discharge of the debt. The witness related the conversation leading to this compromise, and testified that the defendant said that was all he was going to pay the witness, and was more than he had paid any one else. "I told him I did n't suppose there was any law that I could collect the bill, but I thought it was a piece of rascality for him to cheat me out of it; that it was a put-up job by him and others to cheat us Boston folks out of our liquors." The testimony of John S. Day, Charles B. Brown, and J. D. M. Sherman, similar in substance to that of Moore, except as to the conversation leading to a compromise of their claims, was also admitted, subject to the defendant's exception.

Subject to the defendant's exception, the deposition of B. F. Warner was read, as follows : "He [the defendant] applied to me to purchase from me 25 barrels of whiskey, about the 20th of September. * * * I shew him various samples, and he selected a sample of the 25 barrels. The price was agreed upon,—that is, I told him what the price would be. He then stated that he would take the goods and pay cash for them. I asked him who he could give me as reference. He stated that he bought goods of quite a number of the leading houses in our market. He referred me, I think, to a brewer, a Mr. Jones, of Portsmouth. I asked him what he considered cash. He said he would pay for the goods upon their arrival in Portsmouth. I replied to him that I would only sell him the goods upon presentation of the bill of lading, which I would send by express. The money was to be paid before he received the goods. He declined to make the negotiation, saying that he did not wish to purchase goods and pay for them until after he had received them and examined them."

The court declined to instruct the jury as requested by the defendant:

"1. That the sale of intoxicating liquors, and the keeping of the same for sale, being made unlawful and penal by the statutes of Massachusetts, and the liquors themselves being declared a nuisance, no action can be maintained for the liquors or the price thereof, though the contract of sale was as alleged by the plaintiffs [*i. e.*, conditional that the liquors, though delivered by the plaintiffs to the defendant, were to remain their property till paid for].

"2. That the liquors, being a nuisance as aforesaid, had no value at the time of the conversion, and therefore the plaintiffs can recover nothing, or only nominal damages in this suit.

"3. And that if the goods were converted [as alleged in the declaration] in this State, the measure of damages is the lawful market value of the goods here; and that the sale being prohibited by the statute, the value of the goods converted is to be estimated accordingly; and that if the goods were converted in Massachusetts, a similar rule will apply.

" 4. That if the defendant obtained possession of the goods by a fair contract of sale, without any false or fraudulent representation, his intentions are not matter of inquiry, and are of no consequence in this suit; and especially that any intention he may have had of proposing to the plaintiffs a compromise, or a settlement by compromise, or by paying part for the whole was not unlawful, and does not affect the rights of the parties in this action; and that if the defendant, when he bought the goods, did have in mind the fact that he could not be compelled by law to pay for them, this does not affect the sale nor justify this action; and that if, when he bought the goods, the defendant intended to avail himself of the laws of the State where the contract was made, as a defence to any action that might be brought against him for the goods, the plaintiffs being at the time aware of the existence of the law, this does not invalidate the sale nor justify the action."

The court charged the jury that [" if the defendant bought the liquors, promising to pay for them, but at the same time not intending to pay for them, for any cause intentionally concealed from the plaintiffs, and obtained the goods by means of such concealment, the plaintiffs are entitled to a verdict]; but the intention of the defendant in making this purchase from the plaintiffs is the only question in issue in this particular, and his intention in making other purchases is material only so far as it may tend to show what was his intention in buying of the plaintiffs. And his intention at the time of buying of the plaintiffs, and not any intention formed afterwards, is alone material in this suit."

The court instructed the jury that the measure of damages was the market value of the liquors at the time of the alleged conversion.

To so much of the foregoing instructions as is enclosed in brackets, and to the refusal of the court to give the instructions requested, the defendant excepted. Verdict for the plaintiffs for $2,620.58. Motion by the defendant to set the same aside. Reserved.

*Hatch*, for the defendant.

I. The plaintiffs, to prove that the defendant, on August 24, 1870, when he bought the liquors described in the declaration, did not in fact intend to pay therefor, were permitted to prove, by Moore and others, that the defendant bought other liquors September 20, 1870, for which he paid only fifty cents on the dollar, by a voluntary compromise made after the commencement of this suit, and after the attachment of his goods, estate, stock in trade, and household furniture. This evidence was incompetent, and calculated to mislead the jury, because (1) the compromise was voluntary. The acceptance of part of a debt for the whole, with the consent of both parties, cannot be a fraud or evidence of a fraud. (2) The compromise proved was after the commencement of this suit, (3) and after his property was attached, and his business broken up. (4) The purchases were not

contemporaneous with that for which this suit is brought ; and an intention as to them, existing September 20 or later, had no tendency to show that a similar intention existed a month previously.　The facts shown had no lawful tendency to prove fraud, because they were all innocent, or consistent with innocence, and they do not come within the rule laid down in *Whittier* v. *Varney*, 10 N. H. 294, *Bradley* v. *Obear*, *ib.* 480.　In all the cases of this class, the plaintiffs have been permitted to show a fraudulent intent by proof of other fraudulent transactions.　But in this case, the attempt was made to show fraud by proof of transactions not fraudulent.　It is to be observed, that during the trial the ability of this defendant to pay for all he bought, or attempted to buy, was not questioned.　The effect of the admission of this evidence was, that fraud was presumed, not proved.

II.　The voluntary opinion expressed by Mr. Moore was not called for by anything said or done by the defendant, and was certainly prejudicial to him.　Under what rule did it become evidence in the cause ?

III.　The negotiation of the defendant with Warner certainly was not evidence of any fraudulent act or intent.　Its admission prejudiced the defendant, because it was received as evidence of fraud, and in support of the plaintiffs' proposition to prove fraud.

IV.　By the laws of Massachusetts (which were evidence at the trial), spirituous liquors are declared a nuisance, and the sale of them is unlawful and penal.　The plaintiffs seek to recover the value of liquors which they admit they sold to the defendant, because they say the sale was conditional, and the liquors, though delivered, were to remain their property until paid for.　If the action were to recover the price agreed upon, it certainly could not be maintained.　But this action is in effect founded on the alleged conditional sale, which was illegal ; and the plaintiffs seek to recover the price of the liquors, because the terms of the contract of sale were not complied with by the defendant.　The maxim, *Ex turpi causa non oritur actio*, is not limited in its application to any form of action, nor to causes which proceed from contracts.　1 Hilliard on Torts 161 ; *Holman* v. *Johnson*, Cowper 343.　In this case, however, the real foundation of the action is the contract to take the goods and pay for them or return them.　It is not easy to perceive any reason for the accustomed refusal of the court to enforce contracts founded on illegal considerations, which is not applicable to the present case.　If sales of spirituous liquors are unlawful, the delivery of them upon a conditional sale is equally so.　If the policy of the law is to refuse its aid to enforce absolute contracts, the principle applies equally to conditional sales.　If the distinction claimed by the plaintiffs be established, all unlawful sales will henceforth become conditional, and the rule enunciated in the maxim I have quoted becomes a matter of form easy to be evaded.　The case of the plaintiffs was also put distinctly upon the allegation that " when the defendant bargained for the liquors, he had in fact no intention of paying for them, and obtained them by means of false and fraudulent representations."　To maintain this action, the plaintiffs necessarily claim through and by means of their

own illegal contract. They say, We were cheated in an unlawful sale which we made. All the authorities agree that if the plaintiffs are unable to establish their claim without relying upon the- illegal agreement originally entered into between them and the defendant, no action can be maintained. TINDAL, C. J., *Fivaz* v. *Nicholls*, 2 Manning, Gr. & Scott 500, 512, 513; *Phalen* v. *Clark*, 19 Conn. 432; *Gregg* v. *Wyman*, 4 Cush. 322; *Woodman* v. *Hubbard*, 25 N. H. 67.

The rule is forcibly illustrated by KENYON, C. J., in *Booth* v. *Hodgson*, 6 Term 408, 409. The property was placed in the defendant's hands for an illegal purpose. 1 Story Eq., sec. 61; *Armstrong* v. *Toler*, 11 Wheat. 258. The rule is founded on the illegal nature of the transaction. It is not intended to benefit either party; and their respective merits are not to be weighed. *King* v. *McEvoy*, 4 Allen 110; *Galligan* v. *Fannan*, 7 Allen 255.

V. By the express provision of the statute of Massachusetts, where the contract was made, the keeping or sale of spirituous liquors is declared to be a nuisance; the act reduces their value to nothing. If converted there, the measure of damages would be the market.value of the article there; and so, if the conversion were in this State. By this must be meant the lawful market value, which is nothing, because the liquors cannot lawfully be sold in common market in either State. The court cannot sanction a market (or sale) value, which can exist or be ascertained only by a violation of the law. We do not controvert the idea that liquors are property—25 N. H. 540, and *Fuller* v. *Bean*, 30 N. H. 187; but our complaint is, that in the charge and in the refusal of the instructions prayed for is recognized an unlawful market value, founded on illegal sales, as the measure of damages. The prayer was, that the jury be instructed to estimate damages according to the lawful market value of the liquors.

VI. The whole of the fourth instruction asked for by the defendant should have been given to the jury. (1) A simple intention cannot affect an act in all other respects lawful and right, because an evil intention may be repented of before the time of action comes; and it is wholly beyond the province of human law to inquire into simple, unexecuted intentions. The attempt to do it must lead to the greatest abuses, and would open the door to inquisitorial tyranny. The rule of the criminal law is well established. 1 Russ. on Cr. 46. Mr. Story declares that mere intention cannot amount to a fraud unless coupled with some act. 1 Story Eq. Juris., sec. 61. And in *People* v. *Cook*, 8 N. Y. 67, it is said that "fraud in judicial proceedings can never be predicated of a mere emotion of the mind, disconnected with an act occasioning injury to some one." Every definition of fraud in the books includes something more than mere intention—1 Fonblanque Eq., book 1, ch. 2, sec. 8, p. 123; *Chesterfield* v. *Jansen*, 2 Ves. 155— such as misrepresentation or suppression of the truth. *Willink* v. *Vanderveer*, 1 Barb. 599. Fraud can never be imputed in a transaction in itself lawful. In the present case, every act of the defendant was perfectly fair and lawful (except as a violation of the liquor laws). He

made no misrepresentation ; he concealed no fact. He was able to pay, and he would have paid promptly had the liquors been of the quality represented by the plaintiffs. Whether he in his heart intended to pay (a difficult and usually a most unsatisfactory inquiry) is immaterial ; he may have altered his purpose forty times on the day of the sale, without affecting the plaintiffs in any way. The contract was not induced by any false representation. *Bronson* v. *Wiman*, 8 N. Y. 182. If the defendant knew that he could not by law be compelled to pay, so did the plaintiffs. *Hutchinson* v. *Brown*, Clarke (N. Y.) 408. And if he, at the moment, resolved that he would avail himself of the law, can it be said that it was unlawful or fraudulent for him so to do ? If so, it would always be fraudulent for a party to an unlawful contract to invoke in his defence the settled law of the land : the time when the intention to make such a defence is formed, cannot alter its character. But, as we have contended above, the cause of the action being base, it is not for the court to inquire into motives, intentions, or even positive acts of fraud. (2) If the intention was, as in the instruction prayed for, to propose a compromise, or to settle by compromise, this could not be unlawful, for it implies that the assent of the plaintiffs is to be had to the settlement. *Volenti non fit injuria.* This instruction was properly asked for, because the principal evidence of fraud at the trial was the fact that the defendant had compromised with other parties by paying to them fifty cents on the dollar. (3) But the instruction prayed for went much further ; and the court refused to direct the jury to the effect that the mere fact that the defendant, at the time he bought the goods, had in mind the law, and that he could not be compelled to pay for them, did not affect the sale or justify this action. Such instruction was necessary to prevent the jury from being misled by the argument of the plaintiffs, and by the charge that the intention was the question in issue, and by the evidence relating to the compromise with other parties. The refusal must have been made upon the ground that the fact that the defendant had the law in mind at the time of the sale affected the soundness of the contract, and justifies the action of trover ; and the jury must have drawn such an inference. Thus, the maxim, "*Ignorantia legis*," &c., was reversed, and a purchaser is punished for too much knowledge of the law. (4) In the case supposed, in the last clause of the instructions prayed for, which must have been exactly the case at bar, the whole question of intention is brought to its test. Both parties to the sale of the liquors knew that the contract to pay the price could not be enforced by law. The defendant must be regarded as saying to the plaintiffs,—I will take these goods if you will rely upon my simple promise to pay for them. I know, and you know, that you can maintain no suit for the price. And the plaintiffs reply,— We make the sale with this understanding. If an intention to rely upon the established law, openly expressed, would have avoided the imputation of fraud, how does the case differ if the same thing was understood by both parties, though not verbally expressed? *Volenti non fit injuria.* Jeremy on Eq. Juris. 366 ; 1 Story Eq. Juris., sec. 137, note.

*Frink & Butler*, for the plaintiffs.

The plaintiffs' positions at the trial were,—

I. That the defendant obtained the possession of the goods sought to be recovered, upon the condition that the title was to remain in the plaintiffs until paid for. Our courts have always recognized this doctrine of conditional sales, and, in case the condition is not fulfilled, the right of the vendor to repossess himself of his goods. *Fisk* v. *Ewen*, 46 N. H. 173 ; *McFarland* v. *Farmer*, 42 N. H. 386, and other cases. Such, too, is the law of Massachusetts. *Coggill* v. *H. & N. H. R. R. Co.*, 3 Gray 545 ; *Sargent* v. *Metcalf*, 5 Gray 306 ; *Blanchard* v. *Child*, 7 Gray 157, and other cases. The courts here, as well as in Massachusetts, have also holden liquors to be property, notwithstanding the various prohibitory statutes of these States, and have universally protected the rights of owners in them against wrong-doers. *Miller* v. *Stevens*, 100 Mass. 518 ; *Brown* v. *Perkins*, 12 Gray 89 ; *Commonwealth* v. *Coffee*, 9 Gray 139 ; *Priest* v. *Pinkham*, 18 N. H. 520 ; *Fuller* v. *Bean*, 30 N. H. 181 ; *Andover* v. *Kendrick*, 42 N. H. 324 ; *Fisher* v. *McGirr*, 1 Gray 47 ; *Breck* v. *Adams*, 3 Gray 570. These two propositions of law, considered together, lead irresistibly to the conclusion that the plaintiffs had the right to reclaim their goods upon failure of the precedent condition of sale, and if the defendant refused to restore them upon demand, his retention or conversion of them was tortious. But this doctrine of law has been considered and applied to this very class of goods by the court in Massachusetts. *Booraem* v. *Crane*, 103 Mass. 522. And although we have no doubt that our court would come to the same conclusion, yet the decision of the court in that State must conclude this case,—because this conditional contract and delivery under it were completed in that State, and the plaintiffs only pursue their remedy here. *Hill* v. *Spear*, 50 N. H. 253.

II. The plaintiffs' second position was, that the defendant, in conspiracy with one Albert M. Peck, obtained possession of these goods with the preconceived design not to pay for them or return them. The general proposition of law, that the purchase of goods with the preconceived intention of not paying for them is a fraud upon the vendor, which, as between him and the pretended purchaser, robs him of no title to the goods, and passes none to the purchaser, is the doctrine of nearly, if not quite all, the cases. 2 Parsons on Contracts 770 ; 2 Hilliard on Torts 143 ; *Wiggin* v. *Day*, 9 Gray 97 ; *Dow* v. *Sanborn*, 3 Allen 183. Perhaps it is only important for us to know that such was the law of Massachusetts at the time of this transaction. *Dow* v. *Sanborn*, 3 Allen 183. Well established as it is, we do not understand the defendant's counsel to concede that such is the law ; and he says, " whether the defendant in his heart intended to pay, is immaterial." His suggestions find answer in *Dow* v. *Sanborn*, *ante*, and 2 Parsons on Contracts 775.

III. The defendant, in his brief, quotes, " *Ex turpi causa non oritur actio ;* " but the misfortune of his case is, that we do not rely upon an

illegal contract as the basis of our suit. 103 Mass., *ante*. And the party withholding goods under such a contract is a wrong-doer. More than that, if the intention not to pay for these goods existed in the mind of the defendant at the time he was pretending to purchase them, there was no contract which passed title in them as between the plaintiffs and himself; and there was no violation of the law, save such as was contemplated by the defendant. In the language of Judge HOAR, the whole transaction was a mere fiction, a delusion. 3 Allen 183. The whole transaction amounted to nothing more than the tortious taking of the goods by the defendant from the plaintiffs' possession; and, as said in *Booraem* v. *Crane*, there is nothing in the law regulating the traffic in liquors to prevent the recovery of the value of goods thus wrongfully obtained. This contract, also, was one simply forbidden, and not evil in itself (see Judge REDFIELD's note to *Hill* v. *Spear*, 11 Am. L. Reg. (N. S.) 523), and, by the defendant's own admission, was not executed, but only executory. If, therefore, the parties had been in equal fault, the maxim, " *Potior est conditio possidentis*," would not apply. Metcalf on Contracts 14; 3 Phillipps on Ev. 423; *White* v. *Bank*, 22 Pick. 189; Story on Sales, sec. 489.

In his brief, however, and in his *fourth* request for instructions, the defendant's counsel has attempted to evade this long recognized principle of law by speculating as to the causes which might have led the defendant, at the time of his pretended purchase of these goods, to an intention not to pay for them; and he attempts to argue, that if he obtained the goods with an intention to compromise the plaintiffs' claim, or to resist its entire payment by virtue of the law prohibiting the sale of liquors, the sale is not invalidated nor this action justified. We take it that the law does not distinguish as to the reasons which operated to produce the intention not to pay. " If the ultimate design was unlawful, it is of no importance to the completeness of the offence, whether the means were lawful or not." 1 Greenl. Ev., sec. 91. The false and fraudulent act is, the promise to pay, with the preconceived design of not paying, and its intentional concealment from the vendor. The force of the counsel's argument seems to be, that the interposition of these defences are not illegal acts of themselves. True, they may not be; but the promise to pay, which at the very moment is belied by the intent, is a false and fraudulent act. So, too, " it is no crime to be poor," and not to pay your debts when you have not the ability to do so; but to buy goods with the promise to pay for them, and with the preconceived design of evading payment by reason of your insolvency, is a fraud. This case, in this aspect of it, is akin in principle to the well established class of cases, avoiding an attachment of property, which has become exposed to the officers' jurisdiction, by some false pretence, with the intention of seizing it. It is certainly lawful to attach property to secure payment of an honest debt, but the means used to obtain jurisdiction over it are bad. So it is legal (as the defendant's counsel says) to avoid the payment of liquors by the law; but to obtain possession of them under a false promise, and with the preconceived

and concealed intent to defeat payment by such means, is (to adopt the counsel's term) base.

We fear we do not perhaps fully appreciate the (to us) somewhat remarkable reasoning that the purchase of the goods, with a promise to pay in full, but with the intention on the part of the defendant to settle by compromise, was not unlawful, because it implied the assent of the plaintiffs. The only answer necessary would seem to be, that if it implied any assent it would be a compulsory one, and that the intent to compel the acceptance of a partial payment is a design not to pay as promised.

Stranger still seems to us the complaint that the court did not, in so many words and no more, say to the jury that the mere fact that the defendant, at the time he bought the goods, had in mind the law, and that he could not be compelled to pay for them, did not affect the sale or justify this action. No one ever supposed it would do either, if he did not act upon it. The court, however, in its charge to the jury, instead of giving the equivocal instructions prayed for, stated, in exact terms, all the conditions necessary in order to entitle the plaintiffs to maintain their action :

1. The promise to pay for the goods.

2. The intention not to pay for them existing at the time.

3. The concealment of this intention and its causes from the plaintiffs.

4. The obtaining possession of the goods by means of such concealment.

The instruction in this behalf went much further in the defendant's favor than his request, and he has no cause of complaint.

We have considered this fourth request for instructions at this time, because it seemed to us that it could be more legitimately discussed in this connection than any other ; and, even if these instructions had not been properly refused in part, and substantially given in part, as we have attempted to show, still, we conceive that the defendant had no reason to find fault. The defendant's position at the trial was, that he intended to pay for these liquors in full when he obtained possession of them ; and his counsel, in his brief, notwithstanding the verdict, still deems it proper to assert it. The defendant denied under his oath, and his counsel as unqualifiedly in his argument, the existence of any intention, at the time of bargaining for these goods, of making any resistance to their full payment. On the other hand, the plaintiffs maintained that the defendant and Peck conspired to get possession of these goods, with a design not to pay for them ; but they never contended during the trial that this design was predicated upon any intent to invoke the aid of the liquor law, but upon other grounds which are obvious from reading the case. There was, then, no position taken by either party at the trial, nor is there any fact found in the case, that justified such request. We do not believe that the court will be disposed to encourage any such legal ethics as will permit a party to base a request for instructions upon facts which they deny and the other side has never claimed.

(1) There is nothing in the first request for instructions that has not been already discussed. How far the declaration of the Massachusetts statute, that liquors shall be regarded as a nuisance (if the conversion shall be found to have taken place in that State), would qualify the right of property in them, has been very fully considered and determined there. 12 Gray 89, 95. The terms of the statute there considered are in this particular identical with the law of 1869, which was in force at the time of this transaction.

(2) (3) The consideration of the cases already cited also justifies the denial of the second and third requests made by the defendants (if the measure of damages should be determined by the laws of Massachusetts). "The general proposition may be laid down, that the value of the property converted is the measure of damages at the time and place of its conversion." Sedg. on Dam. 479. The true test of the value of the goods often may be, but is not always, the market or current price. *Selkirk* v. *Cobb*, 13 Gray 317 ; *Kennedy* v. *Whitwell*, 4 Pick. 467 ; *Stickney* v. *Allen*, 10 Gray 352. It is unnecessary to argue that these goods not only had a market value, but were also valuable, for other purposes than in the market, to the plaintiffs.

IV. (1) The plaintiffs claimed at the trial that the purchase of an unusually large quantity of liquors during a period of time extending from August 24 to September 20, but principally at these two dates, was in accordance with a plan of operations concerted by the defendant and Peck. The whole transaction was "one general scheme of fraud," and none of it can be appropriately styled *res inter alios.* The evidence of these other purchases, their magnitude, the circumstances attending them, the subsequent disposition of the property, the defendant's unwillingness to pay according to his promise, and his ability or inability to do so, all bear directly upon the question of intent. *State* v. *Johnson*, 33 N. H. 456 ; *Rowley* v. *Bigelow*, 12 Pick. 311 ; *Blodgett Paper Co.* v. *Farmer*, 41 N. H. 403 ; *Bradley* v. *Obear*, 10 N. H. 480 ; *Angier* v. *Ash*, 26 N. H. 109. And the evidence of his attempt to purchase of Warner was admissible for the same purpose. All the ingenious suggestions employed by the defendant's attorney in his brief against the admissibility of this evidence were very properly addressed by him to the jury in his closing argument, in his attempt to explain the suspicious conduct of his client in these several transactions, and the jury pronounced upon them in their verdict. If the defendant was compelled to offer a compromise, because, as his counsel contends, his property was attached and his business broken up, then this simple explanation of his conduct in this particular to the jury must have deprived our testimony of all its force ; and, since no one could have presented this excuse for his conduct to the jury with more ingenuity and plausibility than the gentleman to whom he intrusted his case, and the jury having failed to accept it, we are compelled to the belief that the defendant has been more successful in persuading his counsel than the jury of the honesty of this explanation.

(2) Mr. Moore's remark was made to the defendant during his set-

tlement with him, and was part of the mutual conversation that occurred during it. It related expressly to the entire purchases made at or about this time of the Boston dealers; and the conduct and reply, or absence of reply, of the defendant, when accused of fraud in relation to them, was certainly material.

DOE, J. I. The evidence that the defendant bought other goods of Moore and others, and paid for them fifty per cent. upon a compromise; that he made no reply when Moore said he thought the transaction was " a piece of rascality," and " a put-up job by him and others to cheat us Boston folks out of our liquors ;" and that he refused to buy of Warner unless he could obtain the goods before paying for them, was competent, within the doctrine of the authorities cited by the plaintiffs. Whether evidence of this kind should be excluded on account of its remoteness in point of time, is a question of fact. *Darling* v. *Westmoreland*, 52 N. H. 401, 408–411; *Haines* v. *Ins. Co.*, 52 N. H. 467.

II. We have carefully reconsidered, in the light of the defendant's argument, the question, decided in *Stewart* v. *Emerson*, 52 N. H. 301, whether obtaining goods, under color of a purchase, by a dishonest concealment of an intent not to pay for them, is a fraud in law; and, upon full examination and reflection, the decision in that case is affirmed.

In this case, both parties knew that a sale of whiskey and gin would be illegal, and that the plaintiffs could not compel the defendant to perform his promise of payment. But, the jury having found that the defendant did not intend to pay as he promised, there was not the mutual understanding that would have been necessary to constitute a contract, in favor of the defendant as against the plaintiffs, if the sale of liquor had been legal. *Stewart* v. *Emerson*, 52 N. H. 318, 319. Consequently there was no sale, legal or illegal, by which, as against the defendant, the plaintiffs could be bound, or by which, as against the defendant, the plaintiffs' title could be affected. There being no sale, legal or illegal, and no contract to be rescinded, the title never passed from the plaintiffs to the defendant, and the plaintiffs maintain this action, not upon an illegal contract, or a rescission of a contract, but upon their title, unchanged and unimpaired by any contract, lawful or unlawful.

The plaintiffs' knowledge of the fact that they could not compel the defendant to perform his promise of payment, did not make the understanding that he would pay, a mutual one. If they had known he intended not to pay, they would not have parted with the possession of their goods. His concealment of his intent not to pay, by which he obtained the goods, was the gist of the fraud. That concealment was as fraudulent as if the plaintiffs had supposed they could compel him to perform his promise. There was no law to prevent his paying, if he chose to do so. He induced them to believe that in fact he would pay, notwithstanding the illegality of a sale of such goods. If he had not

induced that belief, they would not have sent him the goods. The concealment of an intent not to pay is equally fraudulent, whether the design is to avoid payment by setting up illegality of sale, or by absconding with the goods, and whether the method of avoiding payment, at first contemplated, is carried out, or abandoned for some other method. It is not the particular method of avoiding payment, but the general intent and fixed purpose to avoid it in some way, that shows a want of the mutual understanding necessary to a contract. The plaintiffs knew that the defendant could avoid payment in other ways besides setting up illegality of sale; but their knowledge of the practical possibility of the defendant's avoiding payment did not subject them to the liability of, and deprive them of all legal redress for, being fraudulently deprived of their goods in every method which they knew to be possible.

III. The ruling, that the measure of damages was the market value of the goods at the time of the conversion, is one that the defendant cannot complain of. The market price, in the ordinary sense, is generally, but not always, the test of value. For such a tort as a conversion of goods a plaintiff may be entitled to large damages, though unable to sell the goods at any price. He may be greatly injured by the loss of goods which he cannot sell, but which would be productive of great benefit, and therefore would be of great value, without a sale. The limitation of the damages to the market value might have been (although the verdict seems to show that it was not) unjust to the plaintiffs; but it was sufficiently favorable to the defendant.

*Judgment on the verdict.*